**IN THE UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Kelli Dudley, )
)
Plaintiff, )
)
)
)
)
Ernest Fenton, Law Office of )
Ernest B. Fenton, P.C., William )
Moore, Brandon Loggins, Kendall )
Anderson, Brian Snyder, and )
Clarence Butler, )
)
Defendant. )

**DEFENDANT BUTLER'S MOTION TO DISMISS PLAINTIFF DUDLEY'S COMPLAINT FOR DAMAGES ALLEGEDLY RESULTING FROM VIOLATION OF THE FAIR HOUSING ACT AND FOR OTHER RELIEF; MOVES FOR DISMISSAL ON THE COMPLAINT FOR FAILURE TO ESTABLISH SUBJECT MATTER JURISDICTION AS PLAINTIFF'S ALLEGATIONS AGAINST DEFENDANT BUTLER DO NOT PRESENT A FEDERAL QUESTION AND THUS LACK SUBJECT MATTER JURISDICTION AS WELL AS FAILING TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

Now comes Defendant Butler, representing himself in this cause of action, and hereby brings this *Motion To Dismiss.*. against Attorney, Plaintiff Kelli Dudley respectfully request pursuant to Federal Rule Of Civil Procedure 12(b)(1) and 12(b)(6) that the Court dismiss Plaintiff's Complaint in its entirety.

FACTUAL BACKGROUND

Chronology

In an effort to summarize the timeline in the instant cause of action, defendants present the following condensed summary of the prior actions taken for the Court's convenience. Any

detailed explanations necessary to the substantive arguments raised in this motion will be noted in the appropriate section below.

*1.* On ***April 30, 2013*** *i*n the original federal lawsuit *(13-cv-3224 Davis v. Fenton et al)* now pending before Chief Judge Castillo, filed on April 30, 2013, Tonya Davis alleges that Fenton and his firm failed to provide adequate legal representation during her foreclosure proceedings because she is African American and furthermore, contended that African-American and Harvard Law School educated Attorney Ernest B. Fenton's alleged discriminatory conduct is part of a broader pattern of "recruit[ing] clients on the basis of race and national origin." (Com pI. at 11,13,14,16, *Davis v. Fenton,* No. 13-CV-3224.) According to the complaint, Ms. Davis consulted with Attorney Fenton on September 25, 2010 and signed a retainer agreement that required Fenton to represent Davis in a mortgage foreclosure proceeding related to her residence. *(Id.* ~~ 11, 13-15.) Then, instead of providing adequate legal services to combat the foreclosure proceeding, Ms. Davis alleges, Fenton filed an appearance on November 1, 2010 but "filed nothing else on [her] behalf for almost one year." *(Id.* ~ 18.) As a result, she claims, in January 2011, the state court entered a judgment of foreclosure and sale. *(Id.* ~~ 19-20.) In her malpractice and civil rights case against Fenton, Ms. Davis sought to recover damages resulting from the alleged inadequate legal services provided, the foreclosure of her home, and her subsequent eviction from her residence. *(Id.* ~ 31.)

2. On ***July 3, 2013***, Fenton moved to stay the litigation and compel arbitration;via motion before Chief Judge Castillo. (Defs.' Mot. to Stay Civil Action Referable to Arbitration [14], *Davis v. Fenton*, No. 13-CV-3224.)

3. Also on ***July 3, 2013***, Fenton filed a lawsuit in the Circuit Court of Cook County against Defendants Dudley and Sidea, the attorneys who then represented Davis in the case before Chief

Judge Castillo. Seeking damages and injunctive relief, Fenton alleges that Defendants

unlawfully accessed privileged attorney client information, made slanderous statements about

him and the services he provided, and discouraged other potential clients from retaining him. (PI.'s Compl., Ex. 1 to Defs.' Am. Notice of Removal [16], ~~ 9, 11, 12.) Though Dudley and Sidea filed their Notice of Removal on ***July 14, 2013*** (Defs.' Notice of Removal [1)), the Circuit Court of Cook County granted Fenton's motion for preliminary injunctive relief three days later: ***on July 17, 2013,*** the Circuit Court enjoined Dudley and Sidea from misusing privileged information, from disparaging Fenton, and from contacting Fenton's current and former clients. (Order Grant'g PI.'s Prelim. Inj., Ex. 4 to Defs.' Am. Notice of Removal.) Fenton asked the court to remand the case to the Circuit Court. Defendants Dudley and Sidea oppose the motion, and, for their part, ask the court to dismiss the complaint against them for failure to state a claim and for lack of jurisdiction.

4. On **September 16, 2013** – Plaintiff's First Amended Complaint filed in Case #13-3224 which alleged: violation of the Fair Housing Act (FHA) §3601 *et seq.*; prohibition of intimidation, retaliation and interference under FHA §3617; violation of the Civil Rights Act §§1981 and 1982; breach of contract; and breach of fiduciary duty.

5. On **January 3, 2014** United States District Judge Pallmeyer in *No. 13C 5019 Ernest Fenton, Law Office Of Ernest B. Fenton P.C. v. Kelli Dudley; The Law Office Of Kelli Dudley; Andrew Sidea and The Law Office Of Andrew Sidea P.C*. issued a *Memorandum Opinion and Orde*r **granting** Plaintiffs' (Law Office of Ernest B. Fenton et al's) **motion to remand.** [14] Defendants' motion to dismiss [21] was stricken without prejudice. The court advised it would send a copy of the opinion to Chief Judge Castillo.

6. On **February 13, 2014** – This Court, by the Honorable Ruben Castillo, administratively dismissed the instant case without prejudice and subject to full reinstatement following required arbitration.

7. **On June 24, 2014,** Clarence Butler Jr. filed his appearance in *Davis v. Fenton et al 13cv3229* as one of the trial attorneys for Ernest Fenton for purposes of serving at trial during the arbitration proceedings. This appearance was filed 15 months after the case had been initially filed in on April 30, 2013. Exhibitt Docket #51 Consequently, Attorney Butler could not have been in any way responsible for events that Attorney has alleged in order to sweep him into this cause of action. Attorney Butler was not involved in any fundraising that Attorney Dudley has alleged nor does she allege any facts by conclusion, which is contrary to pleading requirements.

8. In January 2015 arbitration proceedings commenced, wherein Attorney Butler served as trial counsel.

9. On **February 3, 2015**- An arbitration award was entered by Arbitrator John Monical, disposing of plaintiff's claims as follows: Count I – violation of FHA §3601 – **denied in its entirety** ; Count II – violation of the Civil Rights Act §§1981 and 1982 – **denied in its entirety**; Count III – breach of fiduciary duty (legal malpractice – **granted**; Count IV – breach of contract – **granted**; Count V – prohibition of intimidation, retaliation and interference under FHA §3617 – **denied in its entirety**; and Count VI- violation of the Consumer Fraud Act (we note that this was a new claim inserted in the arbitration proceedings and was not previously included in plaintiff's original or amended complaints before this Court) – **denied in its entirety**. A monetary damages award was entered on the granted claims (legal malpractice and breach of contract). These pre-existing charges that were resolved successfully for Attorney Fenton cannot retroactively be applied to retroactively support a retaliation charge against Attorney Butler.

10**.** On **February 20, 2015**- Defendant Law Office of Ernest Fenton filed a Motion to Clarify and Correct the Arbitration Award;

11. On **March 25, 2015**- Arbitrator Monical entered an amended award, which modified

plaintiff's damages.

12. On **June 24, 2015**- Defendant Law Office of Ernest Fenton filed a Petition to Vacate the Arbitration Award in the Illinois Circuit Court of Cook County (filed under case # 2015 M6 05294), with notice given to plaintiff's counsel via first class mail on July 7, 2015. This motion was set for hearing on July 22, 2015, at 9:00 a.m. Defendants' petition was timely filed within the 90 day deadline for filing a petition to vacate an arbitration award.

ARGUMENT

Attorney Dudley has alleged that the good faith removal of the case to state court and other good faith attempts to zealously meet an attorney's responsibility in the representation of their client effectuated retaliation. In fact she alleges in her complaint that she was degraded by Attorney Butler by objections raised during the proceedings but does not state with specificity any facts to support this alleged and vehemently denied allegation beyond conclusory assertions. More importantly she does not relate how her any of her allegations relative to Attorney Butler (which are vehemently denied and disputed) invokes retaliation and more importantly invokes federal jurisdiction. nconsistent and contradictory statement of fact voluntarily pled and included within the complaint negates Plaintiff, Attorney Dudley's cause of action.

Plaintiff Kelli Dudley in the first paragraph of her complaint alleging that as a direct result of her fair housing advocacy for Ms. Davis, Attorney Dudley has experienced retaliation, interference, and intimidation at the hands of the Fenton Defendants. Then in contradiction of this assertion she states that " *it is impossible to actually intimidate Ms. Dudley*." This statement within the complaint undermines and eliminates her cause of action. In the next

sequential statement assertion within the Complaint, Attorney Plaintiff Dudley inconsistently and contradictorily asserts that the "Defendants did retaliate against her, website "*causing her emotional damage*" and expense, and interfered with her efforts to vindicate Ms. Davis' rights under the Fair Housing Act, 42 U.S.C. § 3604 *et seq"* . The impossibility to *actually "intimidate Ms. Dudley* is inconsistent with the allegation of Attorney, Plaintiff Dudley that the Defendants *"cause her emotional damage.* Specifically, Dudley alleges the interference took the form of preventing Attorney Dudley from talking to her client, for nearly 16

months as the result of a preliminary injunction obtained from a state circuit court branch located in Markham, Illinois, even though the case was removed to Federal court. See *Fenton* v. *Dudley,* 761 F.3d 770, 772 (7th Cir., 2014). First, this activity did not involve Clarence Butler Jr., and thus Dudley's retaliation clam which is derivative and evolves from this allegation must fail as counsel was not involved in the preliminary injunction as said predated his appearance.

Plaintiff Dudley claims that Defendants' hopes to exercise undue influence over the judiciary due to Fenton's hosting of a Markham judge's fundraisers and advertising them on his website. Again these are allegations that do not involve Attorney Butler and there is no factual predicate within the complaint to support such an allegation as Attorney Butler has never participated in any such event. Dudley's entire argument is premised on her contention that the request for removal and was retaliation. Consequently if the removal and the remand was not executed in bad faith then her entire complaint fails.

This issue has been exhaustively address in the January 3, 2014 Memorandum Opinion and Order of United States District Court Judge Pallmeyer and accordingly said opinion is referenced and incorporated herein. Good faith zealous representation does not constitute

retaliation. When a case that could have been filed in federal court is instead initiated in state court,

a defendant may, under some circumstances, remove the case to federal court. 28 U.S.C. § 1441 (a). The removing defendant bears the burden of establishing federal jurisdiction, and in determining whether that burden is met, "federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). Dudley has alleged that removal by counsel prior to Attorney Butler's appearance constitutes retaliation and subsequent representation by Attorney Butler equally constitutes retaliation. The question whether the court has federal-question jurisdiction is "governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the

plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (internal quotations omitted). The fact that a state claim involves a contested federal issue is not by itself sufficient to trigger the federal court's jurisdiction. *Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804, 813 (1986). Instead, federal jurisdiction over a state-law action "demands not only a contested federal issue, but a substantial one, indicating a serious federal

Case: 1:13-cv-05019 Document #: 37 Filed: *01/03/14* Page 4 of 16 PagelD #:<pageID> interest in claiming the advantages thought to be inherent in a federal forum." *Grable* & Sons *Metal Prods., lnc.*, v. *Darue Eng'g* & *Mfg.*, 545 U.S. 308, 313 (2005). Thus Dudley's claim against Attorney Butler based on the paucity of conclusory assertions delineated within the Complaint does not even constitue a state claim. Thus, a case filed in state court arises under federal law when "a right under state law necessarily turn[s] on some

construction of federal law." *Franchise Tax Bd.* v. *Gonstr. Laborers Vacation Trust for* S. *Gal.*, 463 U.S. 1, 9 (1983), *superseded by statute on other grounds*, 28 U.S.C. § 1441 (e). Where the federal court has original jurisdiction over a civil action, the court can exercise supplemental jurisdiction over all related claims under 28 U.S.C. § 1367(a), but supplemental jurisdiction cannot form an independent basis for removal under § 1441. *Syngenta Grop Proi., Inc.* v. *Henson*, 537 U.S. 28, 34 (2002) ("Ancillary jurisdiction ... cannot provide the original jurisdiction

that petitioners must show in order to qualify for removal under § 1441") (internal citations omitted). Dudley is doing the reverse in this instance in attempting to sweep Attorney Butler into a federal cause which does not even constittue a state claim.

Defendants recognize these principles, but insist that removal is proper here. In addition to their argument that their rights in state court arise under federal law, Defendants seek to invoke the narrow exception to the well-pleaded complaint rule set forth in 28 U.S.C. § 1443(1); that section authorizes removal of state court "civil actions or criminal prosecutions ... [a]gainst any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof." *Id.* This removal provision, too, is narrowly construed. See *Davis y. Glanton*, 107 F.3d 1044, 1047 (3d Cir. 1997) ("While the language of [§ 1443(1)] is opaque, the jurisprudence has made clear that Congress has crafted only a narrow exception to the rule that a state court action may be removed to a federal district court only if federal jurisdiction is evident on the face of the plaintiff's well-pleaded complaint."); *Bethune Plaza, Inc.* V. *Lumpkin*, 863 F.2d 525, 528 (7th Cir. 1988) (§ 1443 authorizes removal on the basis of a civil rights defense "only when the state forum is unable or unwilling to resolve" that defense). In order to remove a case under § 1443( 1), the defendant must establish both that (1) "the right allegedly

Case: 1:13-cv-05019 Document #: 37 Filed: *01103/14* Page 5 of 16 PagelD #:<pageID> denied

the [defendant] arises under a federal law 'providing for specific civil rights stated in

terms of racial equality,'" and (2) the defendant "is 'denied or cannot enforce' the specified

federal rights 'in the courts of the State.'" *Johnson v. Mississippi,* 421 U.S. 213, 219 (1975)

(quoting *Georgia v. Rachel,* 384 U.S. 780, 792, 803 (1966)).

 The court addresses below whether any of these provisions authorize removal of

Fenton's case.

**I.Jurisdiction under 28 U.S.C. § 1331**

 Defendants urge, first, that removal is proper under 28 U.S.C. § 1331 because the very

purpose of Plaintiffs' complaint is to "block" their efforts to investigate Plaintiffs' alleged

violation

of the Fair Housing Act in the federal civil rights case. (Def.'s Resp. to Ct. Order [7] at 12.) In

support of their contention that the complaint therefore "arises under" federal law, Defendants

cite *United Farm Bureau Mutual Ins.* Co. *v. Metropolitan Human Relations Commission,* 24

F.3d

1008, 1012 (7th Cir. 1994). In that case, a homeowner filed a complaint with a local civil rights

enforcement agency, claiming that his insurer had violated the local housing ordinance and the

Fair Housing Act by refusing to renew a property insurance policy because the homeowner lived

in a racially mixed neighborhood. 24 F.3d at 1010-11. The insurer filed a complaint in state

court, asking the court to enjoin the agency's investigation, and the agency removed the case to

federal court. *Id.* at 1011. In affirming the district court's refusal to remand the case, the

Seventh Circuit recognized that the homeowner's complaint was "dual filed" under state and

federal law, and that the state civil rights agency performed its investigation pursuant to an

agreement with the federal Housing and Urban Development agency. *Id.* at 1012. In these

circumstances, the insurer's request for an injunction to end the investigation created a federal

question.

*United Farm Bureau* is readily distinguishable from the case before this court. Plaintiff Fenton's claims for conversion, tortious interference with a business relationship, defamation and slander arise solely under state law. Though Fenton's complaint makes brief reference to the pending federal action (PI.'s Com pi ,-r 13), the complaint neither discusses nor challenges the Fair Housing Act or other federal civil rights provisions. *(See id.)* The dispute between Plaintiffs and Defendants does not create a federal question concerning claims "arising under" the laws of the United States. Thus, given Judge Pallmeyers opinion Dudley's claim based on removal to justify retaliation does not present a federal claim for retaliation.

This court was concerned about the matter of federal jurisdiction at the time Defendants filed their removal papers. The court entered a *sua sponte* order directing Defendants to address the propriety of removal in the light of the recent case of *Gunn v. Minton,* 133 S.Ct. 1059 (2013). In that case, after his patent was declared invalid pursuant to the "on sale" bar, plaintiff sued his attorneys for malpractice in a Texas state court, arguing that counsel's failure to present an "experimental use" argument to the federal court in a timely fashion resulted in the loss of his patent rights. Texas state courts disagreed, however, concluding that the "experimental use" argument would have failed, even if it had been presented in a timely fashion. On appeal, the patentee argued that the state courts should not have decided the case at all because the "experimental use" issue arises under federal patent law. *Gunn,* 133 S.Ct. at 1063. The Supreme Court declined to disturb the Texas courts' decision on this basis. Citing *Grable*, 545 U.S. at 314, the Court acknowledged that plaintiff's malpractice claim "necessar[ily]"
raised a patent law issue that was "actually disputed" by the parties, but concluded that plaintiff's claim was "unlikely to have the sort of significance for the federal system necessary to establish jurisdiction." *Id.* at 1065-66. Focusing on whether the question is "significant to the

federal system as a whole," the Court noted that even though the state court would have to answer a question of patent law, the issue raised was "merely hypothetical" and would not alter prior litigation or undermine the "development of a uniform body of [patent] law" because federal

courts were not bound by the state court's resolution of the patent law issue and would eventually resolve any novel federal issue addressed by the state court. *Id.* at 1066-67.

Defendants' argument here is similar to the one rejected in *Gunn.* Even assuming that the state action necessarily raises issues concerning the merits of the federal case or the Defendant-attorneys' conduct in it, both of which are "actually disputed" by the parties, such issues are not significant enough to warrant the protections afforded in the federal forum. Federal courts are not bound by state court decisions involving federal law. This case arguably presents a less compelling basis for exercise of jurisdiction than did *Gunn:* Defendants have not identified a specific issue governed by the Fair Housng Act that the state court will need to resolve in order to assess Fenton's claims. At a minimum, any federal issue that may be resolved by the state court is not substantial enough to justify removal to federal court. e

II. **Jurisdiction under 28** U.S.C. **§ 1443**

Dudley basis her retaliation charge on the same unsuccessful theory previously denied by Judge Pallmeyer. Dudley has included Attorney Butler as a Defendant in this case based on his representation of Defendant Fenton in the arbitration proceedings and activity derivative to the arbitration proceeding including removal. The alternative argument for removal is more complicated, but ultimately faresno better. Specifically, Defendants have suggested that removal is proper because the very act of being forced to defend the state court action denies Defendants their rights under § 3617 of the Fair Housing Act (Defs.' Am. Notice of Removal ~~ 22, 24), which makes it unlawful to "coerce, intimidate, threaten, or interfere with any person ... having aided or encouraged any other person in the exercise or enjoyment of, any rights granted or

protected by [this Act]." (Defs.' Am. Notice of Removal ~~ 13, 15, quoting 42 U.S.C. § 3617.) By filing the state court action against them, Defendants argue, Plaintiffs are "intimidating" and "interfering" with Defendants' ability to litigate the federal civil rights case. *(ld.* ~~ 13-15.) Therefore, as Defendants see things, the pendency of Plaintiffs' lawsuit by itself denies Defendants' rights to be free from coercion, intimidation, threats, or interference when representing Ms. Davis. (Def.'s Resp. to Ct. Order at 5-6.)

As described briefly above, the Supreme Court has outlined a two-prong test that must be satisfied before a state court action may be removed to federal court under 28 U.S.C. § *1443(1)*. *Georgia v. Rachel*, 384 U.S. 780, 788 (1966). Under this test, the defendant must show (1) that the "law providing for ... equal civil rights" upon which defendant relies is "stated in terms of racial equality;" and (2) that defendant has been "denied or cannot enforce that [federal] right" in state court. *Id.* at 788, 792. This second prong of the test is met when either "the denial [is] manifest in a formal expression of state law," or "an equivalent basis [can] be shown for an equally firm prediction that the defendant [will] be 'denied or cannot enforce' the specified federal rights in state court." *Id.* at 803-04. Unless there is a state law that prevents a defendant from exercising her federal rights, the defendant must demonstrate that "the burden of having to defend the [state court suit] is itself the denial of a [federal] right" by identifying a federal law that authorizes the defendant to engage in the acts upon which the state-law claim is based. *Id.* at 805.

Thus, in *Rachel*, the defendants were arrested and charged with criminal trespass when they refused to leave restaurants where they had been denied service on the basis of race. 384 U.S. at 782-83. Invoking § 1443(1), the defendants sought removal of the resulting criminal prosecution, asserting that they were unable to enforce their federal rights because Georgia "by statute, custom, usage, and practice support[ed] and maintain[ed] a policy of racial discrimination." *Id.* at 784. The Supreme Court agreed. The Civil Rights Act of 1964 was

enacted to ensure "full and equal enjoyment" of places of public accommodation regardless of race, and specifically prohibited the prosecution of persons peacefully seeking service in an establishment because of race. *Id.* at 792-94. And, though no Georgia state statute actually authorized racial discrimination, the fact that the defendants had been charged with trespass "enable[d] the federal court to make the clear prediction that the defendants will be 'denied or cannot enforce in the courts of [the] State' the right to be free of [prosecution] for protected activity." *Id.* at 804-05.

Another case decided the same day, however, illustrates the limitations on this ground for removal. In *City* of *Greenwood v. Peacock,* 384 U.S. 808, 827 (1966), the defendants, engaged in a drive to encourage African American voter registration, were arrested and charged with assault and obstruction of public streets. *Id.* at 810. As in *Rachel,* the defendants sought removal under § 1443(1), arguing that the charges were brought against them for engaging in protected civil rights activity, specifically for assisting African Americans in their right to vote. The Court observed, however, that no federal law authorized the defendants to obstruct public streets or commit assault, and no federal law protected the defendants from prosecution for such conduct. *Id.* at 826-27. The defendants in *Rachel* were denied their rights in state court; specifically, the federal statutory right not to be prosecuted for trespass for peaceful activities. *ki.* at 825. By contrast, the *Peacock* Court observed, no federal statute gave the defendants an "absolute right to violate" the state laws that they were charged with violating. *Id.* at 827-28. In holding that removal was not warranted, the Court cautioned against an interpretation of § 1443(1) that would make every state law claim removable when the defendant simply alleged that the state law charges are based solely on race and that he or she is innocent, or that the defendant is unable to receive a fair trial in state court. *Id.* at 832. As Justice Marshall later explained, "The line between *Rachel* and *Peacock* is that between 'prosecutions in which the conduct necessary to constitute the state offense is specifically protected by a federal equal

rights statute under the circumstances alleged by the petitioner, and prosecutions where the only grounds for removal is that the charge is false and motivated by a desire to discourage the petitioner from exercising or to penalize him for having exercised a federal right.'" *Johnson, 421* U.S. at 234 (Marshall, J., dissenting). The case before this court appears to fall on the second side of that line: Defendants believe that Plaintiffs' allegations of misconduct are false and are motivated by Fenton's desire to discourage Plaintiffs from pursuing Ms. Davis's Fair Housing Act case.

The Seventh Circuit has not addressed the particular issue presented here: whether a lawsuit that challenges the conduct of an attorney in a Fair Housing case may be removed from state court to federal court pursuant to § 1443( 1). Although no case cited by the parties is on all fours, other courts have declined to exercise jurisdiction in analogous cases. In *Emigrant Savings Bank v. Elan Management Corporation,* 668 F.2d 671 (2d Cir. 1982), for example, a mortgagor attempted to remove a state foreclosure action to federal court, contending the lender had initiated the action after the mortgagor complained to regulators about the lender's racially-motivated refusal to renegotiate the mortgage. The district court remanded the action, however, and the Second Circuit affirmed. Writing for the panel, Judge Friendly acknowledged that the Fair Housing Act is a law "providing for the equal rights of citizens," but concluded that a foreclosure action allegedly filed in retaliation of Fair Housing Act rights is not removable pursuant to § 1443( 1) because it cannot be "clearly predicted" that the lawsuit itself would deny those rights. 668 F.2d at 672-73, 676 (quoting *Peacock,* 384 U.S. at 828). Similarly, in *New York v. Davis,* 411 F. 2d 750, 752-53 (2d Cir. 1969), the defendant was prosecuted for "menacing" after he allegedly made a threat to a social service worker. The defendant asserted that the charges were false and that the social worker's complaint was motivated by the defendant's successful effort to move, with his African American wife, to a white

neighborhood-efforts the social worker had resisted. In agreeing with the district court that removal of the prosecution was improper, the Second Circuit concluded that the case was more akin to *Peacock* than to *Rachel:* New York's "'menacing' statute '[is not] unconstitutional simply because the defendant claims that the prosecution is basely motivated and that he did not do what has been charged." 411 F.2d at 754; *see also Henlopen Landing Homeowners Ass'n, Inc. v. Vester,* No. 12-308-RGA-CJB, 2013 WL 1704889 at **1, 21 (D. Del. Apr. 19, 2013) (mere act

of bringing state court action to enforce restrictive covenant did not violate Fair Housing Act, so removal under § 1443(1) was improper).

In the case before this court, Defendants are correct that the first prong of the *Rachel* test is met: the Fair Housing Act is a law "providing for ... equal civil rights" based on racial equality. *Metro. Hous. Oev. Corp. v. ViII. of Arlington Heights,* 558 F.2d 1283, 1288 (7th Cir. 1977). And the Act prohibits intimidation or threats against persons who have exercised their rights under the Act, or encouraged or assisted others in doing so, as Defendants urge they have done. But the court does not agree that Defendants are free to remove the case under § 1443( 1). It is undisputed that no Illinois state law contains any explicit provision that denies Defendants' rights under the Fair Housing Act. Nor have Defendants satisfied the court that the very pendency of Plaintiff Fenton's lawsuit violates those rights. In *Rachel,* the defendants had a federal right to engage in the conduct for which they were charged-remaining in a place of public accommodation when asked to leave because of their race. Here, in contrast, the Fair Housing Act contains no provision that gives Defendants the right to engage in conversion, tortious interference with business relations, or defamation and slander. Instead, the situation here is similar to *Peacock,* where defendants unsuccessfully argued that their right to assist African Americans in registering to vote should protect them from prosecution in state court for

assault and obstruction. Likewise, Defendants in this case are unable to point to any federal statute which allows them to lawfully engage in the conduct for which the allegations are based, and the court therefore cannot "clearly predict[]" that Defendants will be denied or unable to enforce their rights under § 3617 in state court. *Peacock,* 384 U.S. at 828. If Plaintiffs are indeed suing Defendants for nothing more than their lawful conduct in representing Ms. Davis, the court presumes Plaintiffs' case will ultimately be dismissed by the state courts.

The cases Defendants rely on, *Northside Realty Assocs., Inc. v. Chapman,* 411 F. Supp. 1195,1199 (N.D. Ga. 1976) and *Sofarelli v. Pinellas County,* 931 F.2d 718 (11th Cir. 1991), do not satisfy this court that removal is appropriate. In *Sofarelli,* the defendant was attempting to move a house on a trailer over a public road in order to place it on a lot and sell it to a minority purchaser. 931 F.2d at 720. The plaintiffs sought an injunction to prevent the defendant from relocating the house, and the defendant counterclaimed and removed the case to federal court, asserting that the plaintiffs' suit was motivated by race discrimination and violated § 3617 of the Fair Housing Act. *Id.* at 722. Though the Eleventh Circuit reversed the district court's remand order, it did so without any discussion of the two-prong test outlined in *Rachel,* noting only that the "parties do not dispute" that defendant's counterclaim "falls within" the holding in *Rachel. Id.*
at 725.

*Northside Realty* does engage in analysis of the issue, but the court finds that case distinguishable. In that case, the defendants had acted as "testers" in an effort to gather evidence of a violation of a federal court's injunction enforcing the Fair Housing Act. When plaintiffs sued in state court for damages they claimed to have suffered as a result of the testing, defendants removed the case to federal court pursuant to § 1443(1). They argued that the

conduct for which they were being sued was protected activity under the Fair Housing Act, and that plaintiffs' state law suit violated their rights under that Act. 411 F. Supp. at 1197. In applying the first prong of the two-prong test outlined in *Rachel*, the court held that the Fair Housing Act is a law "providing for ... equal civil rights" because it prohibits "discrimination in the sale or rental of housing on the basis of race." *Id.* at 1197-98. No state law explicitly denied the defendants their rights under the Act, but the court concluded that the second prong of the test was met, as well; defendants were entitled to attempt to demonstrate that the burden of having to defend the state court suit interfered with their right under § 3617 of the Act to aid or encourage others in the exercise of their civil rights. *Id.* at 1199-1200. Notably, in *Northside Realty*, the only "wrong" for which the plaintiff sought recovery was the testing that the defendants performed in a direct effort to monitor compliance with a federal court order. Plaintiffs in the case before this court, by contrast, have alleged conduct on the part of Defendants-conversion, defamation, and tortious interference-that is wholly distinct from civil rights activity.

Nor is the court certain that the holding in *Northside Realty* is supported by the Supreme Court holdings it cites. In *Rachel*, the Supreme Court concluded that the defendants "had a right not to be prosecuted for their conduct," and that the "'burden of having to defend the prosecutions is itself the denial of a right explicitly conferred by the Civil Rights Act .... '" 411 F. Supp. at 1199 (quoting *Rachel*, 384 U.S. at 805). The *Northside Realty* court drew an analogy between § 3617, the anti-intimidation provision of the Fair Housing Act, and other federal statutes found to have satisfied the second prong: § 203(c) of the Civil Rights Act of 1964, at issue in *Rachel*, and the anti-intimidation provision, 42 U.S.C. § 1973i(b) in the Voting Rights Act, examined in *Whatley v. City* of *Vidalia*, 399 F.2d 521 (5th Cir. 1968). *Id.* at 1199. Significantly, however, in *Peacock*, the Supreme Court explicitly distinguished between the anti-prosecution provision identified in *Rachel* and the anti-intimidation provisions of §§ 1971 (b) and

1973i(b) in the Voting Rights Act, implying that only the former would satisfy the second prong in

*Rachel.* In a footnote, the *Peacock* Court observed that "[n]one of the federal statutes invoked by the defendants in the present case contains" a provision like § 203(c) of the Civil Rights Act of 1964, which provides that "[n]o person shall. .. punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by [the public accommodations section of the Act]." *Peacock*, 384 U.S. at 827 n.25. The Court then referenced its own earlier footnote in which it had identified, among the statutes invoked by the *Peacock* defendants in their § 1443(1) removal petition, the anti-intimidation provisions of the Voting Rights Act, §§ 1971(b) and *1973i(b).1Id.* at 811 n.3.

As other courts have reasoned, these footnotes, and the Supreme Court's carefully delineated holdings in *Rachel* and *Peacock,* support the conclusion that an anti-intimidation

The Court quoted the 1964 version of § 1971(b) stating: "No person, whether acting under color of law or otherwise, shall intimidate, threaten, coerce, or attempt to intimidate,

threaten, or coerce any other person for the purpose of interfering with the right of such other person to vote or to vote as he may choose .... " *Peacock*, 384 U.S. at 812 n.3 (quoting 42 U.S.C. § 1971(b)(1964)). The Court also cited 42 U.S.C. § 1973i(b) *(1964).ld.* provision like § 3617, is insufficient, standing alone, to give rise to "the rare situation[] where it

can be clearly predicted ... that [defendant's] rights will inevitably be denied by the very act of bringing the defendant to trial in the state court." *Peacock,* 384 U.S. at 828 (citing *Rachel); see also Emigrant Sav. Bank,* 668 F.2d at 674-75, 675 n.4 (rejecting *Whatley* as "not a fair reading of *Peacock"* and concluding that, in light of the distinction made by the *Peacock* Court in footnote 25, "it seems clear that ... the scope of the intended expansion [of the permissible range of removal under § 1443(1)] was limited to statutes containing explicit anti-prosecution

language, as was the case with § 203(c) of the Civil Rights Act of 1964 in *Rachef'); Henlopen Landing Homeowners Ass'n Inc.*, 2013 WL 1704889 at **9-10, 12-17 (discussing the implications of *Peacock's* footnote 25, and concluding, after examination of existing case law, that the distinction drawn in *Peacock* between anti-prosecution and anti-intimidation provisions establishes that only the former satisfy *Rachefs* second prong).

This court concludes that Defendants here are not entitled to removal under § 1443(1); the mere pendency of Plaintiffs' state law claims does not require the conclusion that Defendants will be unable to assert their rights under § 3617 of the Fair Housing Act in state court.

## III. Jurisdiction under 42 U.S.C. § 1367

Finally, Defendants argue that Plaintiffs' complaint relates to, or forms part of, the same case or controversy as the civil rights case pending in federal court, and therefore, that removal is proper because the court may exercise supplemental jurisdiction over Plaintiffs' state law claims. (Def. 's Resp. to Ct. Order at 12-13.) Defendants are correct that this court may exercise supplemental jurisdiction over all claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). But supplemental jurisdiction cannot serve as an independent basis for removal. *Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n,* 707 F.3d 883, 890 (7th Cir. 2013) ("A case filed in state court may be removed to federal court only when the case originally could have been filed in federal court."). Because the court finds no independent ground upon which original subject matter jurisdiction may attach, either under §§ 1331 or 1443(1), Plaintiffs' complaint may not be properly removed under § 1367.

## IV. Procedural Concerns

For the reasons explained here, this case must be remanded to state court. The court has no original jurisdiction over Plaintiffs' state law claims, and Defendants have not satisfied the stringent requirements for removal of a state court action under § 1443(1). Herein Dudley's claims are state court claims at best, and that is seriously doubtful.

Herein the removal and injunction predated the appearance of Attorney Clarence Butler and therefore the Complaint should be dismissed as to him.

Respectfully submitted,

s/ Clarence Butler Jr

Clarence Butler Jr.