IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KELLI DUDLEY, | ) | |
| | ) | |
| Plaintiff, | ) | 15-cv-11555 |
| | ) | |
| v. | ) | |
| | ) | Hon. James B. Zagel |
| ERNEST B. FENTON, LAW OFFICES OF | ) | |
| ERNEST B. FENTON, P.C., WILLIAM MOORE, | ) | Jury Trial Demanded |
| BRANDON LOGGINS, KENDALL ANDERSON, | ) | |
| BRIAN SNYDER, AND CLARENCE BUTLER, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF KELLI DUDLEY'S COMBINED RESPONSE AND MEMORANDUM IN SUPPORT OF HER RESPONSE TO DEFENDANT'S, BRIAN SNYDER'S, MOTION TO DISMISS**

Kelli Dudley is a fair housing attorney who represents Tonya Davis in the latter's exercise of her rights under the Fair Housing Act (FHA). Ms. Dudley assisted Ms. Davis by filing a complaint against two of the Defendants in this case, Ernest Fenton (Defendant Fenton) and the Law Office of Ernest B. Fenton, P.C. (Defendant Law Office). Defendant Snyder worked for the latter. After Ms. Davis' fair housing case was filed, Ms. Davis and her lawyers, particularly Ms. Dudley, were subjected to retaliatory, intimidating words, actions, and lawsuits that interfered with their attempts to assist Ms. Davis. These words, actions, and lawsuits by Defendants violated the anti-retaliation, anti-intimidation, and anti-interference provision of the FHA, 42 U.S.C. § 3617.

An early, and likely, first, retaliatory blow to Ms. Dudley was made in a letter to Ms. Dudley signed by Defendant Snyder. The letter was sent in response to Ms. Dudley's request for comments on a joint status report coming due in the fair housing case, *Davis v. Fenton*, 13-cv-03224. The letter said, "I am Attorney Brian Snyder." It went on to say, "Moreover, we anticipate

1

filing ancillary claims against Ms. Tonya Davis; (*sic*) *and pursuing potential claims against the Law Office of Kelli Dudley and Andrew Sidea as well*." (Emphasis added.) Mr. Snyder concluded, "As settlement, we propose this case be immediately dismissed with prejudice." Comp., Exhibit A. In other words, if Ms. Dudley and Mr. Sidea did not cease vindicating Ms. Davis' fair housing rights by dismissing her case, they would be subject to "claims." In fact, this came to pass: Ms. Dudley and Mr. Sidea were sued by Mr. Fenton in retaliation for their fair housing efforts. Comp., Exhibit D. The lawsuit interfered with their assistance of Ms. Davis in vindicating her fair housing rights; the lawyers were barred from talking to each other, their own client, and a vague swath of the community for nearly 16 months. Comp., Exhibit E.

Although the Seventh Circuit Court of Appeals ultimately remanded the retaliatory suit to state court, they expressed concern about the Order barring Ms. Dudley from talking to her client entered in blatant disregard of the Federal law regarding removal:

> "Dudley and Sidea have not asked us to take any action with respect to the state-court injunction, although we understand that they hope to move the district court to dissolve the injunction following our decision on removal. Nevertheless, like the district court, we are troubled that a state court would disregard § 1446's clear command, especially because the face of the injunction order reveals that the state court recognized that the defendants had initiated removal." *Fenton v. Dudley,* 761 F.3d 770, 772 (7th Cir. 2014).

Defendant Snyder's actions prompted Ms. Dudley to file the instant lawsuit, alleging violations of Section 3617 on her own behalf. Defendant Snyder has filed a Motion that says it is pursuant to Federal Rules of Civil Procedure (FRCP) 8,12(b)(1) and 12(b)(6). This motion must be denied.

## RELEVANT ALLEGATIONS

Kelli Dudley is an attorney practicing law in Chicago, Illinois. Comp., Para. 1. Her practice traditionally included helping people in foreclosure, and she founded Resistance Legal Clinic to help people in foreclosure. *Id*., Para. 32.

2

Ms. Dudley's fair housing clients include Ms. Davis, an African-American woman who, in 2010, faced foreclosure on her home. Comp., Para. 12 – 14. Desperate to save it, she contacted and retained Defendants Fenton, an attorney, and Defendant Law Office. *Id*. She paid Defendant Fenton thousands of dollars, but he took no competent steps to save her home.[1] Ms. Davis' home was lost and she and her minor children were evicted. *Id*. Ms. Davis faces a large deficiency judgment resulting from the foreclosure due to Defendant Fenton's neglect. *Id*.

Ms. Dudley assisted Ms. Davis to file a Federal lawsuit to redress Defendant Fenton's violations of the FHA and Civil Rights Act of 1866. Comp., Para. 13 – 14. In response to the FHA lawsuit, Defendant Fenton sued Ms. Dudley (and Andrew Sidea, her co-counsel) at the municipal courthouse in Markham, Illinois (Cook County Circuit Court, Municipal District 5). Comp., Para. 16. This forum bore no relation to a dispute with Chicago residents Dudley and Sidea. Defendant Fenton's state court lawsuit against Dudley was eventually dismissed with prejudice, and sanctions against Defendants Fenton, Law Office, and Brian Snyder were granted. Comp. P. 2. Defendants' attorney in the instant suit appeared recently (2016) in the Markham suit. In that suit, he has acknowledged that the only issue remaining in that suit is the amount of sanctions to be awarded against his clients and their former employee, Brian Snyder. **Exhibit A – State Court Order**. The state court judge is schedule to rule on this in June 2016. The counts against Ms. Dudley were dismissed previously; the suit is not "currently pending." Motion to Dismiss, p. 2.

Ms. Davis' Federal suit against Defendants was not dismissed until 2016. *Davis v. Fenton*, 13-cv-03224 (N.D. Ill. 2016), **Exhibit B – Order Dismissing Davis' 42 U.S.C. § 3617**

---

[1] A judgment was entered on July 22, 2015, in favor of Ms. Davis in the amount of $82,528.10 and interest thereon. The judgment was entered on Ms. Davis's attorney malpractice and breach of contract counts in the case *Davis v. Fenton et al.*, case number 13-cv-03224 in the Northern District of Illinois. These counts were sent to arbitration pursuant to an arbitration clause in the underlying attorney retainer agreement. An arbitration hearing was held that resulted in the entry of an award in favor of the Ms. Davis and against Mr. Fenton. The District Court ultimately confirmed and entered judgment on the award as indicated above.

3

**Claim**. On February 13, 2014, it was *stayed* pending arbitration. The only dismissal was an eventual administrative dismissal. **Exhibit C – Administrative Dismissal**.

The FHA case against Defendants has not "been proven and held to be unfounded." Motion to Dismiss, p. 4. Instead, as U.S. District Court Chief Judge Ruben Castillo stated:

> "In the amended complaint that was filed after the arbitration award, Plaintiff raises a different FHA claim under Section 3617, alleging that Defendants engaged in retaliatory conduct designed to interfere with s exercise of her FHA rights. (R. 63, Am. Compl.) Plaintiff did raise her Section 3617 claim at arbitration, and the arbitration award does at one point state that this claim was "denied in its entirety." (R. 81-3, Modified Arbitration Award at 3.) However, the arbitrator made a prominent note at the outset of the award that Plaintiff had withdrawn this claim "prior to the commencement of the arbitration," and he clearly stated that "[n]either [the Section 3617 claim nor the issue of whether [the Section 3617 claim] could be withdrawn without prejudice was decided by this arbitrator." (ld. at 1.) In light of the arbitrator's clear explanation that he did not even consider Plaintiff s Section 3617 claim, the Court concludes that his later statement that this claim was denied was a scrivener's error.5 *See Unired Steel, Paper & Forestry, Rubber Mfg., Energ,,, Allied Indus. & Serv. Workers Int'l Union, AFL-Crc, CLC v. PPG Indus., Inc*.,75l F.3d 580,585 (7th Cir. 2014) ("[A] court should, if possible, resolve apparent ambiguities [in the arbitrator's decision] by examining the arbitrator's opinion and the record.").
>
> Even if the arbitrator had denied the Section 3617 claim. this fact would not establish grounds to dismiss the amended complaint for lack of subject-matter jurisdiction. Despite Defendants' statement, a claim that has been denied elsewhere is not "ruled not to exist." (R. 76-1, Def,'s Mem. At 3.) *Davis v. Fenton*, 13-cv-03224, p. 7 (N.D. Ill. 2016). [2] **Exhibit B**.

As part of *Fenton v. Dudley*, the state-court lawsuit, Ms. Dudley was prohibited from talking to Ms. Davis, her client, for approximately 16 months. She also could not talk to her co-counsel or a vague swath of community organizations. **Exhibit D**, *see Fenton v. Dudley,* 761 F.3d 770, 773 (7th Cir. 2014).[3] This unprecedented action directly interfered with Ms. Dudley's ability

---

[2] Judge Castillo's footnote 5, included in the quoted text, reads: "Of the six counts raised by Plaintiff that the award of arbitration mentioned, the arbitrator only explained in detail his finding on attorney malpractice, which he granted in Plaintiff s favor. (R. 8l-3, Modified Arbitration Award at 2-3.) He also explained that he was denying the breach of contract count because Plaintiff failed to perform by not making payments. (Id. at 3.) For the remaining four counts, the arbitrator simply indicated that '[for the reasons set forth on the record, [this] Count [] is denied in its entirety.'

"This sparse and boilerplate language, at odds with the arbitrator's detailed discussion about the Section 3617 claim earlier, is insufficient to establish that this claim was "ruled not to exist" as Defendants contend.

[3] The purported injunction was entered *ex parte* and *after the case had been removed to federal cour*t. The injunction was lifted after the case was remanded and Ms. Dudley appeared on her own behalf."

4

to represent Ms. Davis, her client, in her FHA case against Mr. Fenton or otherwise assist her to vindicate her rights under the FHA. Comp. Para. 20.

Ms. Davis separately sued the Fenton defendants for the damage she experienced because of Defendants' retaliation—namely, depriving her of a lawyer to whom she could speak for 16 months. A plain reading of the Arbitrator's Award and Modified Award (Comp., Para. 11) makes it clear that there was no ruling on the merits of the retaliation claim, which was not subject to arbitration. *See Davis v. Fenton*, 13-cv-03224, p. 7 (N.D. Ill. 2016). **Exhibit B**. However, Ms. Davis' retaliation case was ultimately dismissed by U.S. District Chief Judge Castillo. *Id*.

In short, Defendants wanted to stop Ms. Dudley from continuing to assist Ms. Davis to assert her fair housing rights in the Federal lawsuit pending against them. They undertook an unprecedented barrage of actions in retaliation against Ms. Dudley and interfered with her assistance of Ms. Davis—going so far as to prohibit communication between the fair housing lawyer and her own client. *See* Comp., ¶ 20, Exhibit D. The unique aspect of the case as it pertains to Defendant Snyder is that he signed a letter in which he identified himself as an attorney and threatened Ms. Dudley with litigation against her personally if she did not dismiss her client's fair housing suit with prejudice (Comp., Exhibit A)—it is impossible to imagine a more precise threat. Defendant Snyder made the threat in the course of a response to Ms. Dudley's request for comments on a joint status report that was coming due. *Id*. Defendant Snyder did not write on behalf of a client, but on behalf of a law firm of which he was a part. *Id*. While it is unthinkable that the threat was carried out, it was—to the extreme degree that Ms. Dudley was ultimately forbidden from communicating with her own fair housing client. *See* Comp., ¶ 20

5

Ms. Dudley's complaint does not concern pending litigation. An order was entered against Defendants Fenton and Law Office on July 22, 2015. Motion to Dismiss, p. 3. Further, Defendant Snyder was not a defendant in the case. The state court case against Dudley was dismissed with prejudice. The only remaining issue is the amount of sanctions to be awarded against Defendant Fenton, Defendant Law Office, and their former employee, Brian Snyder. **Exhibit A**.

Even if the litigation were pending and even if Defendant Snyder were a party to it, the letter he wrote to Ms. Dudley concerned contemplated litigation against Ms. Dudley if she did not stop assisting her client to vindicate her fair housing rights. It did not concern pending litigation—only threatened litigation. Any litigation privilege invoked to protect attorneys representing their clients is inapplicable.

Ms. Dudley has alleged she has experienced retaliation for representing her client. It is undisputed that there was interference in her relationship with Ms. Davis—the two could not speak for nearly 16 months. **Exhibit D**. Further, Ms. Dudley has stated a claim under a Federal statute, 42 U.S.C. § 3617 giving rise to this Court's jurisdiction.

## STANDARD FOR MOTION TO DISMISS

A motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,'. . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*,

6

556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Twombly*, 550 U.S. at 555).

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

Much of Defendant's Motion rests on statements about other lawsuits. Ms. Dudley has clarified the rulings and provided copies of relevant orders. These can be considered in deciding the present motion. As U.S. District Chief Judge Castillo recently observed:

> "In deciding a Rule l2(b)(6) motion, the Court may consider the complaint itself, 'documents that are attached to the complaint, documents that are central to the complain and are referred to in it, and information that is properly subject to judicial notice.' *Williamson v. Curran*, 714 F .3d 432, 436 (7th Cir. 2013) (citation omitted). Courts may take judicial notice of related court proceedings outside the pleadings without converting the motion to dismiss into a motion for summary judgment. *see Quincy Mall, Inc. v. Parisian, Inc*., 27 F. App. 631,636 (7th Cir. 20ll) ('In reviewing a motion to dismiss, we may look to matters of public record outside of the pleadings, including . . . public court documents[.]')." *Davis v. Fenton*, 13-cv-03224, p. 5 (N.D. Ill. 2016), **Exhibit B**.

Ms. Dudley has adequately pleaded a cause of action under Section 3617 of the FHA. The purpose of the FHA is "to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. Section 3617 provides, in relevant part:

> "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."

In the instant case, Ms. Dudley alleges Defendant Snyder threatened her because she assisted another party, Ms. Davis, to pursue her fair housing rights by filing a lawsuit. ¶¶ 15 - 32.

To state such a claim, Ms. Dudley, arguably [but see *Hidden Village, LLC v. City of Lakewood, Ohio*, 734 F.3d 519, 528 - 529 (6th Cir. 2013); *infra*, p. 10] must allege, and has alleged: (1) Ms. Davis is a member of a protected class under the FHA, African-American; (2) Ms. Dudley aided or encouraged Ms. Davis in the exercise or enjoyment of a right protected by the Fair Housing Act, the filing of a fair housing lawsuit; (3) Defendant was motivated in part by an intent to discriminate, namely, targeting African-Americans for sub-standard housing services; and (4) Defendants coerced, threatened, intimidated, or interfered with Plaintiff on account of the her having aided or encouraged Ms. Davis in the exercise or enjoyment of her fair housing rights— interfered with Ms. Dudley's of Ms. Davis, most importantly by getting an injunction that prevented the attorney and client from speaking for nearly 16 months. *See People Helpers*, *Inc*. *v. City of Richmond,* 789 F. Supp. 725, 732 (E.D. Va. 1992); *cf*. *East-Miller v. Lake County Highway Dep't*, 421 F.3d 558, 563 (7th Cir. 2005).

      Here, Ms. Dudley has alleged Ms. Davis is a member of a protected class, African-American. Comp., ¶ 5, 14. Ms. Dudley alleged she aided Ms. Davis in the exercise of her fair housing rights, namely, the filing of a complaint. Comp., ¶¶ 13, 14. Ms. Dudley alleged Defendant was motivated by a desire to discriminate. Comp., ¶¶ 15 - 32 (non-exhaustively). Finally, Ms. Dudley has alleged Defendant coerced, threatened, or interfered with her on account of her having aided or encouraged Ms. Davis in the exercise or enjoyment of her fair housing rights. Comp., Exhibit A.

      Ms. Dudley has invoked this Court's jurisdiction. Ms. Dudley sets forth and correctly cites the basis for jurisdiction over her claim. Although Defendant fails to attach the pleading it attacks to its Motion to Dismiss, Ms. Dudley's jurisdictional allegation appears on (at least) Page

10 of her Complaint. She alleges a Federal cause of action, 42 U.S.C. § 3617. Jurisdiction attaches attaches because of the existence of a Federal question, under 28 U.S.C. §1331.

Further, U.S. District Chief Judge Castillo found jurisdiction where a FHA claim was posited:

> Because Plaintiff alleges a violation of Section 3617, a federal statute, the Court finds that arising-under jurisdiction has been appropriately invoked. See *United States v. Krilich*, 209 F.3d 968, 973 (7th Cir. 2000) (finding subject matter jurisdiction where the suit charged "a violation of a federal statute which is within the federal courts' federal question jurisdiction"). Defendants may look elsewhere to try to establish that this claim fails on the merits, but Defendants fail to establish that this claim does not belong before this Court as a jurisdictional matter. *Davis v. Fenton*, 13-cv-03224, p. 8 (N.D. Ill. 2016).

Ms. Dudley has alleged a violation of the FHA, and this Honorable Court has jurisdiction over the claim.

**ARGUMENT**

I.   **Ms. Dudley has Stated a Claim for Relief Under the Fair Housing Act, 42 U.S.C. § 3617; The Motion to Dismiss Must be Denied.**

Ms. Dudley has alleged a plethora of facts regarding retaliation against her because of her representation of a fair housing client and interference with her relationship with her fair housing client. For the sake of brevity, one can focus on just one aspect of the interference, one that seems most onerous and is certainly most unusual: Defendant Snyder threatened Ms. Dudley with a lawsuit against her if she did not dismiss her fair housing client's complaint with prejudice. Comp., Exhibit A.

Defendant Snyder, along with other defendants, made good on the threat. They filed a state court lawsuit against Ms. Dudley and obtained an injunction that prevented her from talking to her own client for about sixteen months. Comp., p. 1. It is hard to fathom a more profound "interference."

9

In addition, Defendants misunderstand the pleading standard in a fair housing case. Although Ms. Dudley has pleaded all of the elements of a claim under 42 U.S.C. ¶ 3617, this exceeded the pleading required:

> "Defendants argue that Plaintiffs have not alleged that they were motivated by invidious discrimination. However, in the context of a discrimination claim, plaintiffs are not required to plead facts that establish the elements of their *prima facie* case. *Whitley v. Taylor Bean & Whitaker Mortg. Corp.*, 607 F.Supp.2d 885, 901 (N.D. Ill. 2009)." *Stevens v. Hollywood Towers & Condominium Assoc.*, 836 F. Supp.2d 800, 811 (ND. Ill. December 29, 2011). **Exhibit E**.

Although not mandatory authority, A recent Sixth Circuit case masterfully illustrates the kind of conduct sufficient to constitute a violation of 42 U.S.C. § 3617. In holding a plaintiff had stated a cause of action, the court explained:

> "Suppose Alice says to Bob, a prospective home buyer, 'If a seller ever discriminates against you because of your race, sue him!' Eve, a racist eavesdropper, becomes enraged upon hearing this conversation and threatens to assault Alice. At this point, Eve has violated § 3617, regardless of whether she discriminated against Bob or otherwise violated the fair housing rights secured by §§ 3603-3606. Eve has 'threatene[d] . . . [a] person,' namely Alice. And this threat was 'on account of [Alice's] having aided or encouraged any other person in the exercise or enjoyment of [a fair housing right].' Eve threatened Alice because Alice had encouraged Bob to protect himself against discrimination relating to housing. The statute requires no more." *Hidden Village, LLC v. City of Lakewood, Ohio*, 734 F.3d 519, 528 - 529 (6th Cir. 2013).

In the instant case, Ms. Dudley is like Alice. She advised Bob (Ms. Davis) about fair housing rights, and even undertook assistance in exercising the rights. Defendant Snyder, like Eve, threatened Ms. Dudley.

Nothing more is required. The Motion to Dismiss must be denied.

**II.     Defendant Snyder Threatened Ms. Dudley Concerning Potential Litigation to Retaliate Against her for Representing a Fair Housing Client. Ms. Dudley was not the Target of a Lawsuit at the Time of the Threat and There was No Claim Against Ms. Dudley to "Settle;" Therefore, Defendant Cannot Now Claim "Litigation Privilege."**

Defendants refer to the "absolute litigation privilege." Motion to Dismiss, p. 10. Like most legal doctrines, it is not absolute.

> A. **The Litigation Privilege Protects Attorneys Representing Clients, and Defendants Brought *Fenton v. Dudley* on Their Own Behalf; At the Time of Defendant Snyder's Threat, There was no Pending Litigation Against Ms. Dudley.**

Defendant Snyder wrote to Ms. Dudley and threatened her several months before any case against her was filed. When he wrote, there was no viable claim against Ms. Dudley to settle. He merely wrote the letter to intimidate Ms. Dudley—she would be sued if she did not dismiss her client's case "with prejudice." Comp., Exhibit A. There was no pending, or even reasonably-contemplated litigation; therefore, the litigation privilege does not apply.

Further, Mr. Snyder's law firm acted *pro se* in suing Ms. Dudley. It did not hire an attorney, and Mr. Sndyer did not file an appearance on the law firm's (or Defendant Fenton's) behalf. This provides another reason the "litigation privilege" is not available.

The limit that the litigation privilege only applies to clients is clearly set forth in the case cited by Defendants. Motion to Dismiss, p. 10. In *Steffes v. Stepan Co.*, 144 F.3d 1070 (7th Cir. 1998), the Court explained the availability of the privilege only to attorneys:

> "There are serious problems, however, with recognizing such a federal privilege in this case. First, the common-law litigation privilege, traditionally understood, applies to attorneys, witnesses, judges, and other participants in judicial proceedings. See *Imbler*, 424 U.S. at 439, 96 S.Ct. 984 (White, J., concurring). The district court fit Charles Worden into this rubric by characterizing him as the agent of Stepan's attorneys, who directed him to place the call to Dow Chemical. Worden, however, placed the call in his capacity as Stepan's employee, and his actions are therefore attributable to the company itself. Thus, the phone call was made by the client acting on its attorney's advice. Characterizing the client as the agent of the attorneys handling the client's litigation-- merely because the client takes the attorneys' advice--turns the traditional understanding of the attorney-client relationship on its head. See RESTATEMENT (SECOND) OF AGENCY § 1(3) cmt. e (1957) (stating that an attorney is an agent of the client)." *Id*. at 1075.

Because Defendant Snyder represented a law firm of which he was part, not an outside client, in *Fenton v. Dudley*, he is not protected. His actions are his own, and he is accountable under Section 3617. As U.S. District Chief Judge Castillo recently held:

11

> "Although Novak concerns those who provided legal services to another, and not to the victim of the discrimination, its broader lesson is clear: individuals are liable for interference or retaliation under Section 3617 when their actions are their own, rather than properly imputed to another. Simply put, Defendants' status as a provider of legal services does not act as a talisman to ward off Section 3617 liability. Neither the statute itself nor this Circuit's case law suggest that Section 3617 is inapplicable to this case because Defendants once provided legal services to Plaintiff." *Davis v. Fenton*, 13-cv-03224, p. 11 (N.D. Ill. 2016), **Exhibit B**.

The fact that Defendant Snyder is a lawyer does not make him immune when he violates the FHA. There is no litigation privilege for those acting on their own behalf, only for lawyers representing clients. Further, no litigation concerning Ms. Dudley was pending or reasonably contemplated against Ms. Dudley at the time Defendant Snyder threatened her. Therefore, the Motion to Dismiss must be denied.

**B.      The Litigation Privilege Does not Apply to Bar a Retaliation Under the Fair Housing Act, a Broad Remedial Act.**

In *Steffes*, 144 F. 3d 1076, the court considered whether litigation privilege acts to bar retaliation claims under the Americans with Disabilities Act. It held it did not:

> "Second, and more fundamentally, recognition of the litigation privilege sought by the appellees could interfere with the policies underlying the anti-retaliation provisions of Title VII and the ADA. Retaliatory acts come in infinite variety, see *Knox v. Indiana*, 93 F.3d 1327, 1334 (7th Cir.1996); *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996), and even actions taken in the course of litigation could constitute retaliation in appropriate circumstances. For instance, the Tenth Circuit has held that an employer committed unlawful retaliation by bringing forgery charges against a former employee in order to punish the employee for filing a charge of discrimination. *See Berry v. Stevenson Chevrolet*, 74 F.3d 980, 986-88 (10th Cir.1996); *cf. Power Systems, Inc. v. NLRB*, 601 F.2d 936, 940 (7th Cir.1979) (noting that the filing of a malicious prosecution action against an employee who had filed unfair labor practice charges could itself violate federal labor laws). The Third Circuit has suggested, albeit in dicta, that investigation of an employee who files a discrimination complaint, to discover evidence of resume fraud or some other misconduct to justify terminating the employee, could also constitute unlawful retaliation. *See Mardell v. Harleysville Life Ins. Co.*, 31 F.3d 1221, 1238 n. 1 (3d Cir.1994), vacated on other grounds, 514 U.S. 1034, 115 S.Ct. 1397, 131 L.Ed.2d 286 (1995), reinstated in relevant part, 65 F.3d 1072 (3d Cir.1995). We do not need to endorse these decisions today. The point is that, since some actions taken in the course of litigation could conceivably constitute retaliation, an absolute litigation privilege as defined in Illinois law would be too broad because it would insulate behavior that could otherwise be actionable under Title VII or the ADA."

12

The ADA, to which the *Steffes* court declined to apply the litigation privilege because of its anti-retaliation provisions, is a much weaker law that the FHA and has been eviscerated at every judicial turn. However, the broad, remedial purpose of the FHA has remained sacrosanct for almost 50 years.

For example, in *U.S. v. Wagner*, 940 F.Supp. 972, 979 – 980 (N.D. Tex., 1996), the Court stood up to efforts to use state-court litigation to interfere with fair housing rights. The Court declined to apply various "protections," even the First Amendment, for state-court litigation that had sought a temporary restraining order against a residence for people with disabilities. In holding that the state litigation violated 42 U.S.C. § 3617, the Court emphasized the broad nature of the FHA's protection:

> "The Court finds that the evidence establishes intentional interference by the Defendants; the lawsuit was filed with the intent to interfere, based on the handicap of the home's residents. Defendants are therefore liable under section 3617.9
>
> "4. Section 3617 of the FHA makes it unlawful to: 'coerce, intimidate, threaten, or interfere with any person ... on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section ... 3604 of this title.' 42 U.S.C. § 3617.10
>
> "5. Section 3617 "has been broadly applied to reach all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws." *United States v. City of Hayward*, 36 F.3d 832, 835 (9th Cir.1994), *cert. denied*, ___ U.S. ___, 116 S.Ct. 65, 133 L.Ed.2d 27 (1995) (citations and quotations omitted) (emphasis added)." *Id*.

Like the defendants in *Wagner*, Defendant Snyder and other defendants used the state-court process obtain injunctive relief that interfered with Ms. Dudley's rights under the FHA. Specifically, they interfered with the exercise of rights under the federal fair housing laws by prohibiting Ms. Dudley from talking to her fair housing client. **Exhibit D**.

The FHA is broad enough to ferret out those who attempt to hide under various immunities, including litigation immunity. Defendants' motion to dismiss must be denied.

13

**III.    The Fair Housing Act is Not Limited to Acquisition of Housing.**

At various points, The Motion to Dismiss seems to allege Ms. Davis was not engaged in the exercise or enjoyment of fair housing rights. Motion to Dismiss, p. 7. However, it is undisputed she filed an FHA claim. *Id*. It is simply untrue that Ms. Davis' FHA claim was somehow banished from the record by the arbitrator as Defendants seem to imply. *Id*.

As U.S. District Chief Judge Castillo observed: "[Davis] filed the present action in 2013, claiming that Defendants had violated several state laws with their inadequate representation and that they had also violated the FHA, 42 U.S.C. § 3601 et seq. and the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982 by targeting her for inferior service based on race. (R. 1, Comp.)" *Davis v. Fenton*, 13-cv-03224, p. 2 (N.D. Ill. 2016). Later, Chief Judge Castillo explained, "Despite Defendants' statement, a claim that has been denied elsewhere is not 'ruled not to exist.' (R. 76-1, Def.'s Mem. At 3)." *Id*. at 7.

A claim for retaliation is an FHA claim. In a thorough discussion of the scope of the FHA, Chief Judge Castillo recently held that Ms. Davis' claim against Defendants fell within the Act. In part, he wrote:

> "Unlike the aforementioned Sections 360a(c) and 3605, Section 3617 contains no language limiting those persons or situations to which it applies. Indeed, the Seventh Circuit has held that, to succeed on a Section 3617 claim for interference, a plaintiff must only show that '(l) she is a protected individual under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of her protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate.' *Bloch v. Frischholz*, 587 F.3d 771,783 (7th Cir. 2009). These requirements do not contain any factors relying on the defendant's identity or role, and instead they center on his intimidating action and intent. Accordingly, the Seventh Circuit has found that Section 36l7 applies to a wide variety of potential defendants. See *Bloch*,587 F.3d 771 (condominium association); *Halprin v. Prairie Single Family Homes of Dearborn Park Ass 'n*, 388 F.3d327 (7th Cir.2004) (neighbors and homeowner's association); see also *Whisby-Myers v. Kiekenapp*,293F. Supp. 2d845,852 (N.D. Il1.2003) ('lllustrative cases [under Section 3617] have involved acts such as cross-burning, firebombing homes or cars, shooting shotguns, physical assaults, or throwing Molotov cocktails.'). *Davis v. Fenton*, 13-cv-03224, p. 9 (N.D. Ill. 2016), **Exhibit B**.

Chief District Court Judge Castillo also observed that the original complaint Ms. Davis filed against Defendants fell within Section 3604(b) of the FHA. He cited cases including the seminal *NAACP v. Am. Family Mut. Ins. Co.*, 978 F. 2d 287, 299-300 (7th Cir. 1992) as well as the Seventh Circuits decision in *Davis,* 26 F. Supp. 3D at 741-42. *Davis v. Fenton,* 13-cv-03224, p. 9 – 10 (N.D. Ill. 2016)*.* Ms. Dudley was, at all relevant times, helping Ms. Davis exercise her rights under the FHA and was always subject to the protections of Section 3617.

Ms. Dudley has stated a claim for violation of the FHA. The Motion to Dismiss must be denied.

## CONCLUSION

For the reasons set forth above, Defendant Snyder's Motion must be denied.

/s/Kelli Dudley

Kelli Dudley
Plaintiff

Kelli Dudley
Law Office of Kelli Dudley
1658 North Milwaukee Avenue,
#100-8377
Chicago, Illinois  60647
Ph: 312-771-9770
Email: attorneykelli@sbcglobal.net
ID #6279068

15